# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ILLUMINATION MANAGEMENT
SOLUTIONS, INC.,

          **Plaintiff,**

v.                                             Case No. 10-C-01120

ALAN RUUD, CHRISTOPHER RUUD,
and RUUD LIGHTING, INC.,

          **Defendants.**

# DECISION AND ORDER

This civil action is before the Court on the motion of the Plaintiff, Illumination Management Solutions, Inc. ("IMS") to retransfer this action back to the California district court. For the reasons set forth below, IMS's motion for retransfer of venue is denied.

## BACKGROUND

IMS is a California corporation with its principal place of business in Irvine, California. (Am. Compl. ¶ 1.) IMS specializes in the design and manufacture of high performance light-emitting diode devices, and apparatus utilizing LED devices. (*Id*.)

Defendants, Alan Ruud ("Ruud"), an individual and citizen of Wisconsin, was on IMS's Board of Directors from early 2006 until late 2007. (*Id*. at ¶ 2.) Christopher Ruud

("Christopher"),[1] is also an individual and citizen of Wisconsin, and often attended IMS's Board of Directors meetings on behalf of Ruud, his father. (*Id.* at ¶ 3.) Ruud Lighting, Inc. ("RLIC") is a Wisconsin corporation having its principal place of business in Racine, Wisconsin. (*Id.* at ¶ 4.) Ruud is the Chairman and CEO of RLIC, and Christopher is the President. (Defs.' Resp. Pl.'s Mot. Retransfer Venue 2.)

On April 2, 2010, RLIC filed a patent infringement lawsuit in this District on April 2, 2010, against Cooper Lighting, LLC[2] ("Cooper") *See Ruud Lighting, Inc. v. Cooper Lighting, LLC*, No. 10-CV-0280 (E.D. Wis.) (the "280 action").[3]

On June 7, 2010, IMS filed a lawsuit against RLIC in the Eastern District of Texas ("Texas district court"), *Illumination Management Solutions, Inc. v. Ruud Lighting, Inc.*, Case No. 10-CV-00279 (the Texas action") (Defs.' Resp. Pl.'s Mot. Retransfer Venue, Ex. A.) The Texas action alleged infringement of IMS's United States Letters Patent No. 7,674,018, titled "LED Device for Wide Beam Generation"(Count One); and, civil conspiracy based upon Ruud alleged breach of fiduciary duty, from early 2006 until at least 2007 when he served as a director of IMS (Count Two). (*Id.*, Ex. A ¶¶ 15-24.)

---

[1] To distinguish between father and son who have the same surname, the Court departs from its usual practice of referring to individuals be surname and has used the son's given name. No disrespect is intended or should be implied by the stylistic device.

[2] According to the Defendant, IMS and Cooper are wholly owned subsidiaries of Cooper Industries, PLC. (Defs.' Resp. Pl's Mot. Retransfer Venue 2, n.1.)

[3] The claims and counterclaims in the 280 action relate to two RLIC patents, United States Letters Patent No. 7,686,469, titled "LED Floodlight Fixture," and United States Letters Patent No. 7,891,835, titled "Light-Directed Apparatus with Protected Reflector-Shield and Lighting Fixture Utilizing Same." The 280 action is pending before Chief Judge Charles N. Clevert.

2

On June 8, 2010, the day after commencing the Texas action, IMS filed a second lawsuit in the United States District Court for the Central District of California (the "California district court") against the individual Defendants, *Illumination Management Solutions, Inc. v. Ruud*, Case No. 10-C-797 (the " California action"). (Compl. filed June 8, 2010, ¶¶ 1-3.) IMS's original complaint in the California action alleged breach of fiduciary duty (First Cause of Action) and civil conspiracy (Second Cause of Action). (*Id.* at ¶¶ 8-17, 19-24.) In part, IMS alleged that Ruud violated his fiduciary duties to IMS by misusing information obtained by virtue of their position "to prepare and file patent applications and ultimately obtain patents that were assigned of record to RLIC with the intention of restricting IMS in its development of business and business opportunities." (*Id.* at ¶¶ 15-16.) Based on the same underlying behavior, IMS alleged that Ruud and Christopher engaged in civil conspiracy. (*Id.* at ¶¶ 20-23.) IMS's request for relief included a request for the transfer of any interests and rights "in any patent applications or patents filed during, or as a result of, [Ruud's] fiduciary relationship with IMS that relate to the business of IMS." (*Id.* at ¶ E.)

On July 23, 2010, RLIC filed a motion in the Texas district court requesting that the Texas action be transferred to this District. RLIC argued that the Texas action had no relationship to the Texas district court, and that the transfer would promote convenience, justice, and judicial economy. (Defs.' Resp. Pl.'s Mot. Retransfer Venue, *See* Ex. C.)

On July 23, 2010, the individual Defendants filed a motion to dismiss the California action as duplicative, contending that the claims in that action were virtually

3

identical to count two in the Texas action. (*Id.*, Ex. B.) In response to that motion, IMS voluntarily amended its California complaint, adding RLIC as a defendant by filing a first amended complaint, on September 9, 2010, against the individual Defendants and RLIC (collectively the "Defendants"). The individual Defendants agreed to such amended pleading with the understanding that IMS would dismiss civil conspiracy count (Count Two) in the Texas action. (Defs.' Resp. Pl.'s Mot. Retransfer Venue 3-4.) However, that conspiracy count remains pending. IMS's first amended complaint, the operative complaint in this action, alleges that the individual Defendants breached their fiduciary duties to IMS (First Cause of Action), and (2) all the Defendants engaged in civil conspiracy (Second Cause of Action).

After amending its complaint, IMS asked RLIC to agree that the conspiracy claim in the California action would relate back to the filing date when the claim was originally filed in Texas. (Pl.'s Reply Mem. Supp. Mot. Retransfer Venue 10.) RLIC declined, contending that the filing date of the first amended complaint in the California action should govern. (*Id.*) IMS sought to resolve the dispute by asking the Texas district court to transfer the claim to the California district court, instead of dismissing it. (*Id.*)

On October 11, 2010, the Defendants filed a motion in California to transfer the action to this District. (Defs.' Resp. Pl.'s Mot. Retransfer Venue, *See* Ex. F.) They emphasized that the conduct underlying IMS's allegations occurred in Wisconsin, not in California, and that the California action is materially related to the ongoing patent litigation between RLIC and Cooper, IMS's affiliate company, in this District. (*Id*. at Ex. F, 3-65.) The

4

Defendants also noted that IMS filed two substantially identical actions in two widely-separate jurisdictions – far from RLIC's headquarters in Racine, Wisconsin. (Ex. F, 5-7.)

After briefing and oral argument before the Honorable Judge Josephine Stanton Tucker, the California district court concluded that the transfer was appropriate. (*See* Ex. E.) On December 7, 2010, the California district court granted the Defendants' motion to transfer the California action to this District, pursuant to 28 U.S.C. § 1404(a). In doing so, the California district court emphasized that the transfer was necessary to promote the interests of justice and judicial economy, because the case is potentially related to ongoing patent litigation in this District. The California action was docketed in this District on December 13, 2010, as Case No. 10-C-1120 (the "1120 action"), and assigned to this Court.

Thereafter, the Texas district court concluded that the transfer of that action to Wisconsin was appropriate and issued a decision and order on December 17, 2010. (Defs.' Resp. Pl.' Mot. Retransfer Venue, Ex. C.) The Texas district court denied IMS's motion to sever the conspiracy count as moot when it transferred the Texas action to this District. (*Id.*) Upon transfer to this District, the Texas action, *Illumination Management Solutions, Inc. v. Ruud Lighting, Inc*, designated as Case No. 11-C-34 (the "34 action"), was randomly assigned to United States District Judge J.P. Stadtmueller. On April 22, 2011, Judge Stadtmueller stayed the 34 action pending the resolution of the retransfer issue in this case and until the matter of consolidation is also resolved.

## ANALYSIS

IMS asserts that this action should be re-transferred back to California. Section 1404(a) of Title 28 of the United States Code provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The section inevitably places broad discretion in district courts to adjudicate motions in accordance with individualized, case-by-case considerations of fairness and convenience. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). As emphasized by the Court of Appeals for the Seventh Circuit, "[t]he weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (citing *Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir. 1980); *Fed. Deposit Ins. Corp. v. Citizens Bank & Trust Co.*, 592 F.2d 364, 368 (7th Cir.1979); *Gen. Foods Corp. v. Carnation Co.*, 411 F.2d 528, 532-33 (7th Cir. 1969)).

The law-of-the-case doctrine applies to motions for retransfer of venue. Even though this doctrine "does not limit [a] tribunal's power," the discretion of this Court to retransfer the case back to California still must be "directed" by such principles. *Arizona v. California*, 460 U.S. 605, 618 (1983). Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* Therefore, a court is "'generally precluded from

reconsidering an issue that has already been decided by the same court . . . ."" *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citation omitted). Moreover, this doctrine applies equally (if not with more force) to issues already decided by a coordinate court of equal authority. *See Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3rd Cir. 1982) ("Adherence to law of the case principles is even more important . . . where the transferor judge and the transferee judge are not members of the same court. . . . [T]he principles of comity among courts of the same level of the federal system provide a further reason why the transferee court should not independently re-examine an issue already decided by a court of equal authority."); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (stating that the doctrine applies "as much to the decisions of a coordinate court in the same case as to a court's own decisions"); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3846, at 74-78 (2007). Aside from notions of comity, the doctrine is also "'a heavy deterrent to vacillation on arguable issues.'" *Christianson*, 486 U.S. at 819 (citation omitted). It "reflects the rightful expectation of litigants that a change of judges mid-way through a case will not mean going back to square one." *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997) (citation omitted).

The Supreme Court has been clear that the law-of-the-case doctrine is particularly relevant in situations such as here, where a transferee court is faced with a motion to retransfer. The Supreme Court has emphasized that, "the policies supporting the doctrine apply *with even greater force* to transfer decisions than to decisions of substantive law;

7

transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious cycle of litigation." *Christianson*, 486 U.S. at 816 (emphasis added) (citing *Hayman*, 669 F.2d at 169; also citing *Chi. & N.W. Transp. Co. v. United States*, 574 F.2d 926, 930 (7th Cir. 1978)). Therefore, a transferee court should not overturn a transferor court's decision "in the absence of *extraordinary circumstances* such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id.* at 817 (emphasis added) (quoting *Arizona*, 460 U.S. at 618 n.8). Under the law-of-the-case principles, a transfer decision should not be reversed if the transferee court "can find the transfer decision plausible." *Id.* at 819 (citation omitted).

Consistent with this Supreme Court precedent, courts within the Seventh Circuit have "consistently expressed that motions for retransfer are looked upon with disfavor and must be based upon a lack of power of the transferor court or upon a showing of changed circumstances." *See, e.g., Castillo v. United Air Lines, Inc.*, No. 88-C-6288, 1996 WL 332669, at *2 (N.D. Ill. June 13, 1996) (citing *Ala. Aeromarine, Inc. v. Outboard Motor Corp.*, No. 90-C-0291, 1990 WL 208612, at *2-*3 (N.D. Ill. Nov. 29, 1990); also citing *Russell v. IU Int'l Corp.*, 685 F. Supp. 172, 175 (N.D. Ill. 1985); *Saenz v. Playboy Publ'ns, Inc.*, No. 81-C-5723, 1985 WL 1851, at *1 (N.D. Ill. June 10, 1985)); *see also Reliable Tool & Mach. Co. v. U-Haul Int'l, Inc.*, 837 F. Supp. 274, 283 (N.D. Ind. 1993).

Despite IMS's attempts to dodge this precedent, IMS does not dispute its applicability to this action. Quoting *Avitia v. Metropolitan Club of Chicago, Inc.*, IMS

8

emphasizes that "[a] judge may reexamine his earlier ruling (or the ruling of a judge previously assigned to the case, or of a previous panel if the doctrine is invoked at the appellate level) if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." 49 F.3d 1219, 1227 (7th Cir. 1995) (citing *Arizona*, 460 U.S. at 618 n.8). While attempting to suggest that the *Avitia* standard is more lenient than that articulated by the Supreme Court, the *Avitia* standard is essentially the same and cites Supreme Court precedent. *See id.* (citing *Arizona*, 460 U.S. at 618 n.8).

In moving to transfer this action back to California, IMS does not contend that the California district court acted outside of its power, or that the transfer decision would work a manifest injustice. Indeed, it would be difficult for IMS to reasonably argue that there would be a manifest hardship in litigating this action in Wisconsin, having voluntarily initiated the Texas action in a forum more than 1,500 miles away from its "home." As a result, this Court's decision will focus on whether the California district court's transfer decision was clearly erroneous (not plausible), or whether there are any changed circumstances that warrant transferring the case back to California.

After discussing § 1404(a) and correctly concluding that the action could have been brought in the Eastern District of Wisconsin, the California court addressed each of the traditional factors to determine whether the transfer of venue was appropriate. (Defs.' Resp. Pl.'s Mot. Retransfer Venue, Ex. E 5.) Judge Tucker applied the case law of the Court of

9

Appeals for the Ninth Circuit, examining eight factors that may govern the district court's exercise of discretion in resolving motions to transfer.[4] (*Id*.) The factors are as follows:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

(*Id.* (citing Jones *v. GNC Franchising, Inc*., 211 F.3d 495, 498-99 (9th Cir. 2000).) Guided by these well-established tenets of federal civil procedure, the Court concludes that the California district court did not act erroneously in transferring the case to this District.

The California district court concluded that many of the factors were neutral – the location of relevant agreements; convenience of the parties; convenience of the witnesses; and ease of access to sources of proof. (Defs.' Resp. Pl.'s Mot. Retransfer Venue, Ex. E, 4-6.) In its motion to retransfer, IMS does not challenge these neutral factors. Therefore, this Court will not analyze them.

IMS's primary contention is that the California district court "ignored Supreme Court authority requiring strong deference to the forum chosen by a domestic entity." (Pl.'s Mem. Supp. Mot. Retransfer Venue 7.) In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) the Supreme Court agreed with the district court's recognition that "there is ordinarily

---

[4]The court of appeals for this circuit considers similar factors. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-79 (7th Cir. 2010) (discussing factors).

10

a strong presumption in favor of the plaintiff's choice of forum," and that the presumption is at its strongest when the plaintiff is a domestic entity that has filed suit in its "home" forum. IMS emphasizes that it is a California corporation, its principal place of business is in California, and it is run by two residents of the Central District of California. (Pl.'s Mem. Supp. Mot. Retransfer Venue 8.) Therefore, according to IMS, *Piper Aircraft* required that the California district court keep IMS's lawsuit in California, unless other private and public interest factors "strongly favor" a transfer to Wisconsin. (*Id*.)

As will be further explained, private and public interest factors "strongly favor" a transfer to Wisconsin. Moreover, the California district court's decision was not "clearly erroneous." After explicitly acknowledging the *presumption* set forth in *Piper Aircraft*, the California district court noted that the general presumption is often not applied in cases related to patent infringement. (Defs.' Resp. Pl.'s Mot. Retransfer Venue, Ex. E 5-6.)

While citing an unpublished California district court decision for that proposition (*Id.*, Ex. E 5 (citing *Sorensen v. Daimler Chrysler AG*, No. C-02-4752 MMC (EDL), 2003 WL 1888866, at *3 (N.D. Cal. Apr. 11, 2003)), the California district court apparently did so because that decision collected other published decisions that reached the same conclusion. *See* S*orensen*, No. C-02-4752 MMC (EDL), 2003 WL 1888866, at *3 (citing *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187-88 (N.D. Ill. 1983); also citing *Saint-

*Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002)).[5] Such decisions clearly state that, "in actions *based on* a claim of patent infringement, a plaintiff's choice of forum is accorded little deference where the central facts of the lawsuit occur outside the plaintiff's chosen forum." *Sorensen,* 2003 WL 1888866, at *3 (emphasis added). Instead, the "preferred forum" is "where the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product." *Id.*

IMS does not disagree that the law has developed differently regarding patent cases. IMS even cites 28 U.S.C. § 1400(b) and states that "'patent infringement cases are subject to a special venue statute that permits suit 'in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.'" (Pl.'s Mem. Supp. Mot. Retransfer Venue 10.) However, IMS contends that this action, which involves conspiracy and fiduciary breach claims, "has nothing to do with patent infringement." (*Id.*)

While the caption of IMS's complaint does not include the word "patent," the action is, at is core, a patent matter. In fact, IMS's request for relief requests that certain, unidentified patent assets be transferred to IMS. (First Am. Compl. ¶ F.) As noted by the Defendants, the request for relief calls into question ultimate matters of inventorship and the ownership of certain Ruud patent assets.

---

[5]Additional decisions reaching similar conclusions are: *AMP Inc. v. Burndy of Midwest, Inc.*, 340 F. Supp. 21, 24-25 (N.D. Ill. 1971); *Renzetti, Inc. v. D.H. Thompson, Inc.,* No. 96-CV-8520, 1997 WL 230806, at *4 (E.D. Pa. May 2, 1997); *L.G. Elecs. Inc. v. First Int'l Computer, Inc.,* 138 F. Supp. 2d 574, 590 (D.N.J. 2001).

Although this action alleges claims of breach of fiduciary duty and civil conspiracy , it is difficult to separate the patent questions from the stated claims. Indeed, the patent questions are central to resolving these matters. Therefore, the California district court was not clearly erroneous in placing substance over form and concluding that, at its heart, this is a patent case and, consequently, the typical venue rules of patent cases apply.

Such conclusion also undermines IMS's argument that the events leading to this cause of action took place mainly in California and, therefore, California district court is the appropriate forum. (*See* Pl.'s Mem. Supp. Mot. Retransfer Venue 8-9.) The California district court correctly noted that the preferred forum is one in which the alleged conduct *that forms the basis of the complaint* occurred. *See* 28 U.S.C. § 1391. Again, IMS's complaint requests the transfer of any interests or rights "in any patent applications or patents filed during, or as a result of, [Ruud's] fiduciary relationship with IMS that relate to the business of IMS." (First Am. Compl. ¶ F.) Therefore, IMS's breach of fiduciary duty and conspiracy claims are based upon the Defendants' alleged improper use of IMS's information to apply for and obtain patents – this alleged misconduct occurred in Wisconsin, not in California.

Even if the presumption set forth in *Piper Aircraft* was fully applicable to this case and the special patent rules did not apply, this Court would find that the presumption has been overcome. *Piper Aircraft* states that the presumption can be rebutted when "the private and public interest factors clearly point towards trial in the alternative forum." 454 U.S. at 255. The "factors" referenced by *Piper Aircraft*, 454 U.S. at 41 n.6, are factors presented in

13

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), and relied upon by the courts of appeals for federal judicial circuits.

This Court will not discuss all the factors in detail. However, a private factor *Gilbert* highlights is "other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* at 508. Two other public factors *Gilbert* highlights are "the administrative difficulties flowing from court congestion," and "unnecessary problems in conflict of laws." *Id.* at 509.

Although these particular factors have not been expressly adopted by the Ninth Circuit, the California district court linked its conclusion to such considerations, labeling them as the "interest of justice" factors. (Defs.' Resp. Pl.'s Mot. Retransfer Venue, Ex. E 7.) Because the issue underlying IMS's claims is the development and application of unidentified patents and one remedy IMS seeks is the transfer or rights and interests in those patents, the California district court reasonably concluded that the cases could be potentially related. (*Id.*, Ex. E 7.)

While IMS denied "any evidence" of a relationship between the two actions in one of the Defendants' discovery requests, it still questionably "reserve[d] its right to update its response . . . as additional information is uncovered." (Pl.'s Mem. Supp. Mot. Retransfer Venue 18-19 (quoting Ex. A (Defs.' First Request for Admission to IMS, No.1).) Moreover, IMS had been repeatedly asked to affirmatively state whether the patent at issue in the Wisconsin litigation is one of the Ruud patent assets that IMS was complaining about when

14

it filed the California action. (Defs.' Resp. Pl.'s Mot. Retransfer Venue, Ex. E 7.) The California district court recognized that IMS had consistently failed, or refused to answer that important question – a question which IMS should have been able to answer because RLIC's patents are publicly available. (*Id*., Ex. E 7.)

> The California court opined:
>
> The Court is troubled by IMS's failure to explicitly state or concede that the patent at issue in the Wisconsin litigation will not be at issue in this action. Although it is typically the defendant's burden to give specific ways in which cases might be related, here, as a result of Plaintiff's silence as to which patents and patent applications are at issue, Defendants are unable to present any more specific evidence than that which was stated in their Motion. As noted by Defendants at oral argument, Defendants' patent applications are publicly available, and IMS could readily identify which patents or patent applications are at issue in this litigation. IMS's failure or refusal to do so, causes the Court concern about the possible convergence of these cases.

(*Id*., Ex. E 7.)

Based on the facts before the California district court, it reasonably viewed IMS's efforts to evade a firm answer as an attempt to defeat the motion to transfer. IMS's avoidance left open the possibility that later it could claim that IMS has some interest in the patent at issue in the *Cooper Lighting* case. The California district court found that "[t]ransferring this case to the Eastern District of Wisconsin would alleviate any risk of conflicting judgements if, as discovery proceeds, these cases become two sides of the same coin." (*Id*., Ex. E 7.) The California district court transferred the case to avoid conflicting judgments, and also to avoid unnecessary court congestion, by keeping these two seemingly

15

related actions in the same forum. Moreover, while not expressly stated by the California district court, transferring the case would undeniably be easier, more expeditious, and less expensive. The California district court's ruling is entirely consistent with the *Gilbert* factors, and such factors adequately rebut the presumption in favor of the plaintiff's choice of forum.

IMS also argues that the California district court erred in finding that the application of California law to this case only "slightly" favored keeping the case in California. (Pl.'s Mem. Supp. Mot. Retransfer Venue 13.) However, the California district court correctly acknowledged that, while "the only law that definitely applies here is California's choice-of-law rules," the Eastern District of Wisconsin "could easily understand and apply California's choice-of-law rules." (Defs.' Resp. Pl.'s Mot. Retransfer Venue, Ex. E 5.)

Again, it must be emphasized that a district judge must consider these factors in light of all of the circumstances of the case. "'Determination as to the greater convenience or inconvenience must rest within the sound judicial discretion of the district judge to whom the petition for change of venue is addressed.'" *B. Heller & Co. v. Perry*, 201 F.2d 525, 527 (7th Cir. 1953) (quoting *Nicol v. Koscinski*, 188 F.2d 537, 538 (6th Cir. 1951)); *see also Gen. Foods Corp.*, 411 F.2d at 533. This Court is not privileged "'to substitute [its] judgment for that of the district court upon the propriety of the transfer of a case. If relief is to be granted . . . it must appear from the record that [the district court] has been guilty of a clear abuse of

discretion in ordering the transfer.'" *Gen. Foods Corp.*, 411 F.2d at 533 (quoting *Chemetron Corp. v. Perry*, 295 F.2d 703, 704 (7th Cir. 1961)).

The California district court exercised its discretion in concluding that the application of California law weighed only "slightly" in favor of keeping the case in California. While IMS repeatedly challenges this exercise of discretion, it does little to show precisely why this was implausible. Instead, IMS contests the California district court's assertion that the parties did not brief what state's law would apply, and explains in detail how California's choice-of-law rules provide that application of California law is appropriate, which was explicitly acknowledged by the California court. (*See* Pl.'s Mem. Supp. Mot. Retransfer Venue 13-16.) Without argument of value in the record, this Court concludes that the California district court's decision was not "clearly erroneous" in giving slight weight (especially when compared to the "interest of justice" considerations) to the application of California law, which could easily be applied by this Court. That is part of the wide latitude of judicial discretion granted to district courts in applying the relevant balancing test and adjudicating transfer motions under § 1404(a).

IMS's last argument why the California district court acted in error is based upon that court's conclusion that this case was likely related to the pending patent litigation in Wisconsin. (Pl.'s Mem. Supp. Mot. Retransfer Venue 18.) As previously stated, such an inference was reasonable, given IMS's lassitude in answering the question whether the patent at issue in the California litigation is the same patent at issue in the 280 action. While IMS is

more assertive in its current motion before this Court, (*see* Pl.'s Reply Mem. Supp. Mot. Retransfer Venue 7), it still does not explicitly affirm or deny whether the cases are related. And, in any event, it is too late. That argument should have been made before the California district court, not here.

In short, the California district court did not act in a "clearly erroneous" manner when it granted the Defendants' motion to transfer venue. The California district court applied the correct legal standards in considering a § 1404(a) transfer motion, and properly took into consideration the unique facts of this case. Moreover, the weight assigned to each factor of the balancing test is a completely discretionary decision that is entitled to great deference, and all of the California district court's conclusions are fully supported by the record before that court. Above all, "interest of justice" considerations weighed strongly in favor of the transfer. As such, this Court does not find the "extraordinary circumstances" necessary to retransfer the case back to the California district court.

One final matter remains to be addressed – as previously noted, under Seventh Circuit precedent, a retransfer of venue may also be granted if changed circumstances necessitate such a decision. IMS has not presented any circumstances that would warrant such a result. However, it is relevant that, since the transfer of this action, the Texas action was

also transferred to this District. That subsequent event militates *against* transferring the action back to California.[6]

In sum, IMS has not established that the transfer decision was clearly erroneous or that circumstances have changed warranting a retransfer of venue. This is particularly true, considering the relatedness of 34 action, and the ongoing patent infringement litigation in the 280 action. If this action was re-transferred back to California, "it is quite likely that the parties will continue to engage in jurisdictional ping pong, based on IMS's unnecessary and unusual multi-district filing strategy." (*See* Defs.' Resp. Pl.'s Mot. Retransfer Venue 10.) It is time to end this jurisdictional game. IMS's motion to retransfer this action is denied. The Court will direct the Clerk of Court to provide a courtesy copy of this Decision and Order to Chief Judge Clevert and Judge Stadtmueller.

Routinely, at this juncture, the Court would set a scheduling conference. However, this file, as well as filings in the 280 action and 34 action, suggests that the parties are contemplating moving for consolidation of some or all of these actions, and this Court will give them an opportunity to decide how they intend to proceed.

Under the procedure for consolidation of civil actions, any motion for consolidation would be filed in all actions sought to be consolidated. *See* Civil L.R. 42 (E.D.

---

[6] The Defendants state that they intend to move to consolidate of, at least, the 34 action and the instant action in this District, because they believe that consolidation is necessary to prevent the parties from litigating identical questions of law and fact in separate courts, thereby creating the risk of conflicting judgments by coordinate courts. (Defs.' Resp. Pl.'s Mot. Retransfer Venue 9-10.) Moreover, consolidation would conserve judicial and party resources.

19

Wis.) If no motion for consolidation of the actions has been filed by the stated date, the Court will set a status conference to set a schedule for this action.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

IMS's motion to retransfer venue (Docket No. 70) is **DENIED**;

The Clerk of Court is **DIRECTED** to provide a courtesy copy of this Decision and Order to Chief Judge Clevert and Judge Stadtmueller; and

If no motion for consolidation has been filed in this action **by October 18, 2011**, the parties will be provided with a date for a status conference to set a schedule for this action.

Dated at Milwaukee, Wisconsin, this 16th day of September, 2011.

                                      **BY THE COURT**

                                      _____
                                      **HON. RUDOLPH T. RANDA**
                                      **U.S. District Judge**